Keating, J.
Appellants are the contract vendors and vendees of a 9,500 square foot vacant lot, Lot 31, in a developed section of Bronxville. The vendors previously purchased and resided upon one of the two adjoining improved lots, Lot 33, also a 9,500 square foot parcel. Hence the lots were bought at different times. The vacant property was purchased in 1948 and apparently the two were never used and occupied as a single unit (a fence separated them). Both lots were fully conforming building lots until 1938 when the area was rezoned to require 10,000 square feet per parcel. However, both parcels were within the zoning law even after 1938 under a saving-clause in the ordinance providing an exemption from area requirements for separately owned lots. Appellant Fulling’s later common ownership, commencing in 1948, did not have the benefit of this exemption. In 1953 the area requirement for lots in this residence district was increased to 12,000 square feet and this is the present requirement. The contract vendees have agreed to purchase Lot 31, contingent upon the issuance of an area variance and a building permit.
The issue in this case is whether the Zoning Board of Appeals abused its discretion, as a matter of law, in denying the petitioners ’ application for an area variance and, hence, whether the zoning ordinance in question is unconstitutional as applied to their property.
The general rule prevailing in this State and in other jurisdictions is that zoning ordinances creating minimum area standards for the construction of homes are not per se unconstitu *33 tional. (Matter of Fina Homes v. Young, 7 N Y 2d 845; Matter of Chasanoff v. Silberstein, 6 N Y 2d 807; National Land & Inv. Co. v. Easttown Twp. Bd., 419 Pa. 504). These cases recognize that there are public benefits to be derived from such ordinances, and that, in the absence of a showing of unreasonableness in application, they will be upheld.
The Zoning Board here denied the petitioners’ application for a variance on the ground that they failed to demonstrate any “inequity”, “practical difficulty” or “ hardship ” which can justify exemption from the intent of the zoning ordinance.
Special Term upheld the decision of the board on the ground that, if the petitioners were permitted to obtain an area variance, ‘‘ it would follow that any owner with an over-sized lot could divide it in half and sell off two sub-standard building sites in utter disregard of the ordinance.”
The court also held that the ordinance was not confiscatory since Mr. Pulling had paid only $5,000 for his property and was offered $11,000 for it by his two neighbors. The record seems clear that, with the area variance, the Pullings could obtain almost double the $11,000 for the property.
The question of when a minimum area zoning ordinance is unconstitutional as applied to a particular property has never been determined by this court — although there are several out-of-State cases as well as lower court cases which have dealt with the problem. (National Land & Inv. Co. v. Easttown Twp. Bd., supra; Hamer v. Town of Ross, 59 Cal. 2d 776; Roll v. City of Troy, 370 Mich. 94; Du Page County v. Halkier, 1 Ill. 2d 491; Bismark v. Incorporated Vil. of Bayville, 49 Misc 2d 604; Biviere v. Town of Hempstead, 40 Misc 2d 152; see, generally, note 15 Syracuse L. Rev. 507.) An examination of these cases indicates that the criteria applied by both the Special Term and the Zoning Board here were erroneous.
The basic rule which has evolved from the cases is: where the property owner will suffer significant economic injury by the application of an area standard ordinance, that standard can be justified only by a showing that the public health, safety and welfare will be served by upholding the application of the standard and denying the variance.
Minimum area requirements have been justified for a variety of reasons — the primary one being the control of population. *34 The greater the amount of land per house, the less congestion, the easier to handle water supply and sewage and the fewer municipal services to be provided (see National Land & Inv. Co. v. Easttown Twp. Bd., supra). In addition, there may be a legitimate interest in maintaining and preserving the character of a particular area.
In the case at bar the Zoning Board did not base its denial of the area variance on any harm which might be done to the particular purposes sought to be vindicated by the zoning ordinance and Special Term’s decision is likewise deficient in this regard. It would appear that the reason for the absence of any discussion of the public benefit to be derived from a denial of relief is that in fact no legitimate community interest would be detrimentally affected by allowing the petitioners such a variance.
The record indicates that every lot immediately surrounding the lot in question is substandard—less than 12,000 square feet; of the improved lots in the “ Cranford ” area, in which the lot in question is located, 30 lots are under 9,500 square feet; 24 lots, including the lot in question, are 9,500 to 10,500; 9 are 10,500 to 12,000 and only 20 lots are over 12,000.
It is thus clear that ‘ ‘ we contemplate here an * * * ‘ island ’ of [12,000] minimum lot size zoning in a residential area of substantially less restrictive zoning.” (Hamer v. Town of Ross, 59 Cal. 2d 776, 782, supra.) There does not seem to be any reasonable argument which can be made that the character of the immediate area would be in any way affected by the granting of the variance. Nor does it appear that there would be any difficulty in supplying the water and sewage and other municipal facilities. Indeed, the record is completely barren of any justification for the denial of the variance other than the fact that the petitioners have failed to demonstrate sufficient hardship, and that the ordinance is not so severe in its operation as to be confiscatory. While these considerations are controlling, once it is demonstrated that the public health, safety and welfare will be served by application of the zoning restriction (Stevens v. Town of Huntington, 20 N Y 2d 352), until such a showing is made, the fact that the property owner will suffer a severe financial loss by the operation of the ordinance should be sufficient to entitle him to relief.
*35 To state the matter more precisely: until it is demonstrated that some legitimate purpose will be served by restricting the use of the petitioner’s property, he has sufficient standing to challenge the ordinance. Once it is demonstrated that some legitimate public interest will be served by the restriction, then, before the property owner can succeed in an attack upon the ordinance as applied, he must demonstrate that the hardship caused is such as to deprive him of any use of the property to which it is reasonably adapted, and that, as a result, the ordinance amounts to a taking of his property. (Stevens v. Town of Huntington, supra.)
In the case at bar no justification for the burden placed upon the petitioners’ property has been demonstrated and, in the absence of such a demonstration, the petitioners are entitled to succeed in their application for a variance.
Since Special Term did not have an opportunity to hold a hearing and evaluate the facts in light of the law as outlined above, the order should be reversed, with costs, and the case remanded for proceedings in accordance with this opinion.