DONALD G. CORTER, Respondent, *v.* ZONING BOARD OF APPEALS FOR THE VILLAGE OF FREDONIA et al., Appellants, and MAX RUBENSTEIN et al., Intervenors-Appellants.

Fourth Department, December 5, 1974.

*Samuel L. Drayo, Jr.,* for appellants.

*Towne, Rubenstein & Snyder (Joseph Rubenstein* of counsel), for intervenors-appellants.

*Lipsitz, Green, Fahringer, Roll, Schuller & James (Paul J. Cambria, Jr.,* of counsel), for respondent.

GOLDMAN, J.   The Zoning Board of Appeals of Fredonia (Board) and Max and Sally Rubenstein (Intervenors) appeal from a judgment which annulled the Board's denial of respondent's application for a variance which would permit respondent to construct a swimming pool in his backyard.   The judgment directed the Board to approve the application and ordered the Building Inspector to issue a zoning permit.   In granting the relief requested in this article 78 proceeding Special Term determined that the swimming pool was not a " structure ", as defined in the village ordinance, and cited for its authority *Matter of Albini* v. *Board of Appeals* (41 Misc 2d 783, 784).   That case held that an in-ground pool " may not be considered a ' building ' within the meaning of the ordinance " and was not subject to the maximum building area restriction of the Town of North Hempstead ordinance.   We do not find this determination controlling in defining " structure " as used in the Fredonia zoning ordinance.

Respondent's property, which measures 90 feet by 240 feet, is located at the northeast corner of Holmes Place and Central Avenue in an R-2 residential district.   The principal building on the site is a combination residence and dental office and so located that respondent has a 55 feet wide yard on the east side, a 65 feet wide yard on the west side and a 22.3 feet yard in the rear of the property.   The lot being on the corner the zoning ordinance treats the westerly portion as a front yard, which requires a 100-feet setback.   There is also a restriction prohibiting fences which obstruct vision.   There is a six-feet stockade fence on the line between the properties of respondent and intervenors.   The back porch of the intervenors is 18.2 feet from the fence and the edge of the proposed pool would be only 3.15 feet from intervenors' back lot line.

The Building Inspector refused to grant respondent a permit to build an in-ground swimming pool in the backyard and the Board denied respondent's application for a variance.   The denial of the permit was on the ground that the proposed swimming pool was a " structure " and violated the rear lot restriction.   In affirming the Building Inspector's decision the Board gave as its reason that the installation of the pool would reduce the value of intervenors' property, that the installation would

be conducive to noise which would be detrimental to the ailing intervenor Sally Rubenstein, and that the pool could be constructed in the easterly or westerly yard of respondent where it would be in compliance with the ordinance. Special Term found that "on the basis of permit approvals granted to others in somewhat similar circumstances" the decision of the Board was "arbitrary and capricious and an abuse of discretion". We cannot agree with this conclusion.

It is axiomatic that there is a presumption that the Board's decision is correct and that the court will not substitute its own judgment for that of the Board's unless it is demonstrated that the decision is arbitrary, contrary to law, or not supported by substantial evidence (*Matter of Fiore* v. *Zoning Bd. of Appeals,* 21 N Y 2d 393, 396; 2 Anderson, New York Zoning Law and Practice [2d. ed.], pp. 206–211). Furthermore, although zoning ordinances are said to be in derogation of the common law and, therefore, must be strictly construed (*Matter of 440 East 102nd St. Corp.* v. *Murdock,* 285 N. Y. 298, 304), a local zoning board has a reasonable latitude in the interpretation of its own ordinances. We recognized this principle in *Matter of Leathersich* v. *Wade* (20 A D 2d 963, 964) in upholding the determination of a zoning board of appeals on the authority of *Board* v. *Hearst Publications* (322 U. S. 111, 131), which stated that "where the question is one of specific application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially, the reviewing court's function is limited". The administrative determination should be accepted if it has "warrant in the record".

We disagree with Special Term's conclusion that the swimming pool is not subject to the ordinance's "Yard" requirement that "there shall be a rear yard with a depth of not less than 25 feet". The broad definitions of the words "structure" or "yard", as used in the ordinance, support the conclusion that the pool is a "structure", for the ordinance defines it as "any facility constructed or used for residence, business, industry, or other public or private purposes, *or accessory thereto* [emphasis supplied], including tents * * * and similar facilities whether stationary or movable". An in-ground swimming pool is a "facility constructed or used for residence * * * or private purposes or accessory thereto". That "yard", as defined, is mutually exclusive with a "structure" is clear from the ordinance's definition of "yard" as "an unoccupied space open to the sky on the same lot with a building or structure".

Swimming pools in the yards of residences are relatively recent accessories to life-styles and there are few appellate decisions addressing the question at bar. In *Scott* v. *Board of Appeal of Wellesley* (356 Mass. 159) the Supreme Judicial Court of Massachusetts in considering the issue concluded that an in-ground swimming pool, located a few feet from the neighboring property line, was for the purposes of the yard setback requirements a "structure". In that case the Wellesley by-law was similar in many respects to the Fredonia ordinance. The court said, at page 162 "We think that the pool is to be deemed a structure for purposes of the yard or setback provisions of the Wellesley by-law. It is a large permanent installation constructed of wood, steel, stone and earth, with a plastic liner. Although mostly below ground level there is, because of it, a material occupation of a substantial area above ground. We think it is within the strict exclusion of the front and side yard provisions". The specifications for the pool in the instant case are very similar to the *Scott* pool specifications and provide for steel and concrete construction. There is additional similarity in that the Fredonia supplementary regulations for swimming pools also require the construction of a four-foot fence and filtration equipment.

Having determined that the pool was not a "structure", Special Term did not "reach the alternative relief for a variance which petitioner requested". As recited above, the Board's reasons for its decision were all related to the welfare of the neighboring intervenors. The Board's finding, therefore, cannot be supported on the record before us. The standard to be applied here was clearly set forth in *Matter of Fulling* v. *Palumbo* (21 N Y 2d 30, 33) where the court stated that the basic rule is "where the property owner will suffer significant economic injury by the application of an area standard ordinance, that standard can be justified only by a showing that the public health, safety and welfare will be served by upholding the application of the standard and denying the variance".

The Board's finding that the pool could be constructed on the westerly yard is patently erroneous. Respondent's lot being a corner lot the westerly yard is treated as the front yard and, therefore, subject to a 100-feet setback requirement. Being only 65 feet from the road the proposed pool could not be constructed there under the ordinance restrictions. Furthermore, the Board's finding that the installation of the pool would diminish the value of intervenors' property is a conclusory statement with insufficient substantial evidence to sup-

port it (*Matter of Ennis* v. *Crowley*, 12 A D 2d 999; *Matter of Wehr* v. *Crowley*, 6 A D 2d 214, 218). The findings that the pool would be conducive to "noise pollution" and would cause Intervenor Sally Rubenstein further "emotional strain" are unsubstantiated conclusions.

Evidence before the Board indicated that six large shade trees were located in respondent's east yard. At Special Term the record was supplemented to show that an additional cost of $3,000 would be necessary to remove these trees and place the pool in the east yard. Thus evidence of practical difficulties which might preclude respondent from constructing his pool in the east yard was available, but was not sufficiently explored at the Board hearing.

There was absent any evidence or finding that any public health, safety or welfare purpose would be served by preventing respondent from putting the pool in his back yard. "Until it is demonstrated that some legitimate purpose will be served by restricting the use of the petitioner's property, he has sufficient standing to challenge the ordinance. Once it is demonstrated that some legitimate public interest will be served by the restriction, then, before the property owner can succeed in an attack upon the ordinance as applied, he must demonstrate that the hardship caused is such as to deprive him of any use of the property to which it is reasonably adapted, and that, as a result, the ordinance amounts to a taking of his property. (*Stevens* v. *Town of Huntington*, [20 N Y 2d 352])" (*Matter of Fulling* v. *Palumbo*, 21 N Y 2d 30, 35, *supra*).

Inasmuch as private swimming pools are expressly permitted under the ordinance, no special exception permit is required. Respondent's application to construct the pool behind his family dwelling in an R-2 residential district clearly falls within the provisions of the ordinance. The issue to be here determined is whether the Board properly denied respondent's application for an "area variance" from the rear yard requirement. Having concerned itself almost entirely with the effect upon the Intervenor of the construction of the pool, without any consideration of the public welfare, the Board's determination cannot be confirmed. A proper determination cannot be reached without a further Board hearing.

The judgment should be reversed and matter remitted to the Zoning Board of Appeals for the Village of Fredonia for further proceedings in accordance with this opinion.

WITMER, J. P., MOULE, SIMONS and MAHONEY, JJ., concur.

Judgment unanimously reversed on the law and facts, without costs, and matter remitted to the Zoning Board of Appeals for the Village of Fredonia for further proceedings in accordance with opinion by GOLDMAN, J.